UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN SOLOMON,

      Petitioner,                              Case No. 2:23-cv-11095

v.                                              Honorable Susan K. DeClercq
                                                   United States District Judge

JAMES CORRIGAN,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

While in jail for kidnapping and rape, Martin Solomon kidnapped and raped a fellow inmate. Following numerous failed appeals, he seeks a writ of habeas corpus here. At the crux of Solomon's petition are questions about the constitutional guarantees of self-representation, the boundaries of permissible evidentiary inclusions, and the propriety of prosecutorial conduct at trial—each claim requiring careful scrutiny and state-court deference under controlling law.

As explained below, none of Solomon's claims merit habeas relief. Accordingly, his petition will be dismissed with prejudice, and he will not receive a certificate of appealability or leave to appeal without paying.

**I.**

Solomon's convictions stem from allegations that he sexually assaulted and kidnapped another inmate at the Wayne County Jail, while he was incarcerated and awaiting trial for separate charges of rape, kidnapping, and fleeing custody. *See* ECF No. 10-9, PageID.468. Both cases were held before the same judge. *See id.* at PageID.463, 465–66. The following facts have been truncated to address the issues discussed in this Order.

Solomon's path to trial involved protracted pretrial proceedings.  The initial trial, started in 2017, was halted during jury selection because defense counsel raised concerns about Solomon's competency.[1] *See* ECF No. 10-1 at PageID.262. Then, during the next two years, Solomon cycled through five defense attorneys, voiced numerous complaints against them, and made repeated accusations of misconduct— including that they perpetrated fraud on the court and conspired with the prosecutor to convict Solomon in exchange for allowing their retained clients to prevail. ECF Nos. 10-5 at PageID.333–424; 10-7 at PageID.409; 10-9 at PageID.471–80. The trial court stated that the reason for the substitutions was due to Solomon's inability to communicate with the lawyers and not due to the attorneys' performances. ECF No. 10-7 at Page ID 409.  Solomon also repeatedly accused the prosecutor of misconduct,

---

[1] After being evaluated at the Forensic Center, Solomon was deemed competent to stand trial. *See* ECF No. 10-1 at PageID.262.

claiming that the prosecutor tampered with DNA test results, altered interview tapes, and coerced witness testimony.  *Id.*

Solomon initially voiced his desire to represent himself during his arraignment on June 16, 2017. ECF No. 1 at PageID.34. The court deferred a decision pending a formal motion, which Solomon never submitted. *Id.*; *see also* ECF No. 10-1 at PageID.261–62.  Then Solomon sought self-representation at several pretrial hearings.  Although the court did not address the requests, Solomon was allowed to personally address the court, and he filed 22 motions *pro se*. ECF No. 10-9 at PageID.486–88.

At the final pretrial hearing in March 2019, Solomon again requested to represent himself and demanded to call "approximately 26 witnesses" to testify. ECF No. 10-9 at PageID.486. The trial court denied Solomon's motion for self-representation on the grounds that his past and likely future behaviors would disrupt the proceedings and transform the trial into a "complete circus." ECF No. 10-9 at PageID.488–91 ("You're too disruptive."). Yet Solomon continued to argue, contesting the court's jurisdiction over his criminal case and threatening to contact the media. *Id.* at PageID.496–98. The court said it would not entertain those arguments, but Solomon would not relent, so the court had him removed from the courtroom. *Id.*

The following week, the case proceeded to jury selection and trial, with Attorney Wyatt Harris representing Solomon. *See* ECF No. 10-10 at PageID.500– ECF No. 10-19 at PageID.1915. The following factual summary is presumed true on habeas review[2]:

> Defendant was convicted of sexually assaulting JB inside JB's jail cell at the Wayne County Jail on August 24, 2016. The two men were both inmates. According to witnesses, defendant is much larger in stature than JB. JB testified that he was inside his jail cell, discussing his criminal case with defendant, who was outside the cell. The unit had not been locked down for the night, so inmates were free to move about the common areas, and JB's cell door was unsecured. According to JB, he went to get something inside his cell and, when he turned around, defendant had entered the cell, blocked the doorway to prevent JB from leaving, forced JB onto the bed, threatened him, and then sexually assaulted him. JB admitted that he ejaculated during the sexual assault, and said that defendant ejaculated on JB's thigh.
>
> JB reported the sexual assault to a jail deputy the next day. After JB reported the assault, defendant accused JB of having sexually assaulted him. Both men were interviewed, and both were examined the next day by a sexual assault nurse examiner (SANE). Samples were collected from both men and submitted for forensic testing and DNA analysis. DNA consistent with each man's DNA profile was found in samples collected from the other. At trial, the court permitted the prosecution to introduce evidence of defendant's prior sexual assaults against other persons under MCL 768.27b.
>
> Defendant testified at trial and denied sexually assaulting JB. He claimed that he was smoking a cigarette with JB inside JB's cell when JB suddenly punched him in the head, knocking him unconscious. When he awoke, JB was sexually assaulting him while threatening him with sharp pencils. Defendant claimed that, during the assault, JB made

---

[2] "Findings of fact made by the state court are presumed to be correct unless rebutted by 'clear and convincing evidence.'" *Hartman v. Bagley*, 492 F.3d 347, 356 (6th Cir. 2007) (quoting *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007)).

defendant masturbate, which caused defendant to ejaculate, and semen
ended up on JB's leg.

*People v. Solomon*, No. 349015, 2021 WL 4929781, at *1 (Mich. Ct. App. Oct. 21,

2021) (per curiam) (unpublished), *appeal denied*, 974 N.W.2d 210 (Mich. 2022).

In April 2019, a Wayne County jury found Solomon guilty of kidnapping and

raping a fellow inmate at the Wayne County Jail.[3] *See id.* He was sentenced as a

fourth-offense habitual offender, MICH. COMP. LAWS § 769.12, to serve concurrent

sentences of 45–80 years for each of two charges of first-degree criminal sexual

conduct, *id.* § 750.520b(1)(c), 12–30 years for each of two second-degree charges,

*id.* § 750.520c(1)(c), and a parolable life sentence for kidnapping, *id.* § 750.349.

Solomon's appellate counsel raised four claims:

> (1) the trial court denied his Sixth Amendment right to represent
> himself,
> (2) the trial court erroneously admitted hearsay evidence,
> (3) the prosecutor committed misconduct during Solomon's
> cross-examination, and
> (4) cumulative error rendered the trial fundamentally unfair.

ECF No. 1 at PageID.11.[4] His convictions were affirmed, *Solomon*, 2021 WL

4929781, and he was denied leave to appeal, *Solomon*, 974 N.W.2d at 210.

---

[3] Solomon's pending charges were all dismissed the day he was sentenced in the
instant case. *See People v. Solomon*, No. 16-007639-01-FC (Mich. 3d Cir. Ct.
Wayne Cnty. filed Aug. 5, 2016) (prior case); *People v. Solomon*, No. 17-004867-
01-FC (Mich. 3d Cir. Ct. Wayne Cnty. filed Aug. 5, 2016) (instant case).
[4] Solomon also filed a *pro se* supplemental brief raising additional claims, but he did
not raise them in the instant habeas petition. *See* ECF No. 10-20 at PageID.2628; *see*

In May 2023, Solomon filed a habeas petition here, raising the same claims his appellate counsel directly appealed to the state courts. *See generally* ECF No. 1.

## II.

Solomon's claims are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which "circumscribe[s]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

## A.

"The AEDPA standard of review only applies to claims that were 'adjudicated on the merits in State court proceedings.'" *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010) (quoting *Hartman v. Bagley*, 492 F.3d 347, 356 (6th Cir. 2007)).

If a state-court decision "is unaccompanied by an explanation," then the habeas petitioner must still demonstrate that "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). However, if the state court denies relief for "a federal claim," then "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

---

*also People v. Ryan*, 819 N.W.2d 55, 58 n.1 (Mich. Ct. App. 2012) ("A Standard 4 brief refers to a brief filed by the defendant [personally] in which he or she raises issues on appeal against the advice of counsel.").

or state-law procedural principles to the contrary." *Id.* at 99 (citation omitted). This presumption can be overcome only if "there is a reason to think some other explanation for the state court's decision is more likely." *Id.* at 99–100 (citation omitted).

Here, the Michigan decisions were on the merits. After the Michigan Court of Appeals thoroughly rejected the appeal, ECF No. 11-2 at PageID.3410–32, the Michigan Supreme Court was "not persuaded that the questions presented should be reviewed," ECF No. 11-2 at PageID.3351. Because the "denial of an application 'for lack of merit in the grounds presented' is a decision on the merits of the issues raised," it "qualif[ies] for AEDPA deference." *Werth v. Bell*, 692 F.3d 486, 493–94 (6th Cir. 2012). Thus, AEDPA's deferential standard of review applies to the claims that Petitioner raised on direct appeal. *Wilson v. Sellers*, 138 S. Ct. 1188, 1190 (2018) ("A federal habeas court reviewing an unexplained state-court decision on the merits should 'look through' that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning.").

## B.

Under the amended 28 U.S.C. § 2254(d), a federal court may grant habeas relief only if (1) the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court,"

or (2) it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Franklin v. Francis*, 144 F. 3d 429, 433 (6th Cir. 1998).

A state court's decision is "contrary to" clearly established federal law if it either (1) applies a standard different than what Supreme Court precedent says to apply or (2) applies the correct precedent to materially indistinguishable facts but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 397, 405–06 (2000). A state decision is not "contrary to" clearly established federal law if it applies a state-law standard that has "some similarity" to the Supreme Court's standard. *See Robertson v. Morgan*, No. 20-3254, 2020 WL 8766399, at *4 (6th Cir. Dec. 28, 2020) (unpublished).

An "unreasonable application" of federal law misapplies the correct law to the facts of the case. *Williams*, 529 U.S. at 409. A mere error is not enough, as the state court's application of federal law "must have been objectively unreasonable," *Wiggins*, 539 U.S. at 520–21, and must be "given the benefit of the doubt," *Renico v. Lett*, 559 U.S. 766, 773 (2010). If fairminded jurists could disagree on the correctness of the state court's determination that a claim lacks merit, then federal habeas relief is precluded. *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, if it is within the "realm of

- 8 -

possibility" that the state's decision is reasonable, then habeas relief must be denied. *See Woods v. Etherton*, 578 U.S. 113, 113 (2016) (per curiam).

The federal court must presume the correctness of the state court's factual findings, 28 U.S.C. § 2254(e)(1), giving "complete deference" to any findings that are not "clearly erroneous," *West v. Seabold*, 73 F. 3d 81, 84 (6th Cir. 1996) (citation omitted). A "readiness to attribute error [to the state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overturn the state court's factual findings, the petitioner must prove by clear and convincing evidence that they were unreasonable "in light of the evidence presented in the State court proceeding." *Eady v. Morgan*, 515 F.3d 587, 594–95 (6th Cir. 2008) (citing 28 U.S.C. § 2254(d)(2), (e)(1)).

## III.

## A.

Solomon primarily asserts the trial court violated his Sixth Amendment right to represent himself. Solomon contended on direct appeal—and reiterates here—that the trial court's refusal to allow him to discharge his counsel and to proceed *pro se*, based solely on its anticipation of disruption, flouts the Constitution. The courts of Michigan correctly disagreed.

A defendant's right to wield his own legal destiny, though firmly rooted in U.S. constitutional tradition, is not unfettered. The Supreme Court has made clear

that, though the Sixth Amendment enshrines the right of self-representation, this right is not a carte blanche to subvert the orderly conduct of a trial. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

Here, Solomon's many pretrial antics—including fantastical allegations and belligerent disputes with the court—provided a reasonable basis for the trial judge's conclusion that permitting Solomon to represent himself would turn the proceedings into a farce. *See Solomon*, 2021 WL 4929781, at *1–2.

The Michigan Court of Appeals examined the trial court's decision with a meticulousness that Solomon's broad allegations did not deserve, concluding that the trial court had ample opportunities to observe Solomon's conduct and thus was in a sound position to predict the likely disruptive trajectory of his self-representation. *Id.* The record overwhelmingly supports this conclusion. *See* discussion *supra* Part I.  Solomon was not only argumentative but also persistently refused to adhere to procedural norms, challenging the court's rulings with abandon and creating procedural tumult. *Id.*

This Court may not second guess the state court's predictive judgment. Rather, this Court must ensure that the decision was in keeping with established federal law. The question is not whether this Court—or even the Sixth Circuit— might disagree with the state court's assessment, but whether that assessment was reasonable in light of the record before it. The answer here is a clear "Yes."

The state court's determination aligns with the Supreme Court's directive that trial courts need not permit a defendant to exercise his rights in a manner that obstructs the fair and orderly administration of justice. *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 162 (2000) ("A trial judge may also terminate self-representation or appoint 'standby counsel'—even over the defendant's objection—if necessary." (citation omitted)); *accord United States v. White*, No. 1:20-CR-20416, 2021 WL 1253385, at *2 (E.D. Mich. Apr. 5, 2021) ("The appointment of stand-by counsel to represent the defendant does not violate the defendant's Sixth Amendment right to proceed *pro se*, even if the appointment is made over defendant's objection." (citing *McKaskle v. Wiggins*, 465 U.S. 168 (1984))). And no clearly established Supreme Court precedent prevented the state courts from referring to or relying on Solomon's pretrial behavior in denying his self-representation request. *See Woods v. Donald*, 575 U.S. 312, 318 (2015) (per curiam) ("[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." (cleaned up) (quoting *White v. Woodall*, 572 U.S. 415, 424 (2014))).

Given these considerations, Solomon's claim that he was unconstitutionally denied his right to self-representation because he might be disruptive does not hold water. The trial court's decision was a prudent one, aimed at preserving the dignity and efficacy of the judicial process. Thus, Solomon's claim here, like his conduct

below, is ultimately without merit. *See Indiana v. Edwards*, 554 U.S. 164, 171, 177–78 (2008) ("*Faretta* itself and later cases have made clear that the right of self-representation is not absolute.").

**B.**

Solomon next alleges the trial court admitted improper hearsay during trial. Specifically, he challenges the admission of the complainant's statements to two nurses who conducted his sexual-assault examination. He thinks these statements were investigatory, not for medical treatment, and therefore should have been excluded under Michigan's hearsay rules. The Michigan Court of Appeals correctly disagreed, finding the statements were indeed for medical purposes. *Solomon*, 2021 WL 4929781, at *3–4 (citing Mich. R. Evid. 803(4)).

To the extent that Solomon argues the trial court misapplied MRE 803(4), his claim is not cognizable. A federal habeas court may not reevaluate state-court determinations on state-law issues; the lodestar here is the Constitution and the laws and treaties of the United States—not state evidentiary rules. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (first citing 28 U.S.C. § 2241; and then citing *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)).

The Michigan court's reading of its own rules binds this Court unless Solomon can show a violation of federal law clear enough to light up the night sky. *See Comer v. Warden Ohio State Penitentiary*, 577 F. App'x 534, 539 (6th Cir. 2014)

- 12 -

("To the extent this ruling is a state court's interpretation of state law, it is binding on a federal court sitting in habeas." (first citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); and then citing *Estelle*, 502 U.S. at 67–68)).

But Solomon's argument barely flickers. The state courts found the nurses' testimony admissible under a medical-treatment exception, a reasonable application of Michigan's rules. Indeed, it almost seems obvious that statements made to a nurse about an alleged rape, occurring right after the alleged rape, were made for medical purposes. *See People v. Mahone*, 816 N.W.2d 436, 440 (Mich. Ct. App. 2011) ("[A] victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." (citations omitted)).

Moreover, Solomon provides no contrary Supreme Court precedent. *See Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) ("The first and most conspicuous failing in Desai's petition is the absence of a Supreme Court holding . . . that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause." (citing 28 U.S.C. § 2254(d))). Habeas relief is not a tool for refining state-law decisions but for correcting errors that make a trial fundamentally unfair. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Thus, Solomon's disagreement with how the state court applied its evidence rules does not rise to the level of a federal due-process violation.

And the record does not suggest any flagrant abuse of discretion or an interpretation so offbase as to suggest an unreasonable application of clearly established federal law. Solomon was not denied a chance to challenge the veracity of the statements; nor does he demonstrate how their admission so infected the trial's fairness as to render his convictions fundamentally unjust. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). Thus, his challenge does not overcome the formidable barrier of 28 U.S.C. § 2254(d), which demands more than a mere disagreement with the state court's decision.

For these reasons, Solomon's second claim does not warrant habeas relief.

## C.

Solomon's third claim asserts the prosecutor overstepped the bounds of propriety by referring to Solomon's alleged past sexual misconduct and making inquiries about his sexual proclivities and anatomy.

The Michigan Court of Appeals rejected that claim too, noting that the trial court had already approved the introduction of evidence concerning Solomon's prior sexual assaults under MCL 768.27b. *Solomon*, 2021 WL 4929781, at *5. The appellate court concluded that the prosecutor was on solid ground, operating within the ambit of the trial court's evidentiary rulings, and thus his questioning did not transgress the rules of fair play. *Id.* Specifically, the court reasoned that, because the defense suggested that the complainant, not Solomon, was the aggressor, the

prosecution's detailed and admittedly uncomfortable questioning was not only permissible but also probative. *Id.* at *5–6.

Not every unsavory remark or question by a prosecutor amounts to misconduct; rather, the conduct must be "so egregious" that it "render[s] the entire trial fundamentally unfair. *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted); *accord Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Here, the prosecutor's questions, though pointed and perhaps uncomfortable, were tethered tightly to the issues at the heart of the defense's theory. The crux was credibility, and the jury was entitled to hear the probing questions that might illuminate the truth or falsity of Solomon's claims. And a prosecutor does not commit misconduct by challenging a witness's credibility and asking relevant questions. *Slagle v. Bagley*, 457 F.3d 501, 518 (6th Cir. 2006).

Moreover, the doctrine of fairness does not insulate a defendant from sharp questions on cross-examination when his own version of events puts his conduct squarely at issue. *Darden v. Wainwright*, 477 U.S. 168, 169, 181–83 (1986); *accord People v. Ackerman*, 669 N.W.2d 818, 827 (Mich. Ct. App. 2003) (per curiam) ("Because the evidence at issue was relevant and responded to defense counsel's cross-examination, no basis exists to conclude that the prosecutor offered this evidence in bad faith."). This principle applies with even more force if, as here, the

trial court ruled that the evidence is admissible. *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). The questions about Solomon's past and his behavior during the incident with JB were relevant to whether Solomon was a victim or a perpetrator. As the Michigan Court of Appeals correctly reasoned, the prosecutor's approach— while aggressive—was aimed at testing Solomon's testimony against the physical and circumstantial evidence presented.

In habeas review, this Court must be doubly deferential: first to the trial court's frontline observations of the trial dynamics, and second to the appellate court's broader view of the proceedings. Solomon bears the burden to show that the state courts' rejection of his prosecutorial misconduct claim was not merely wrong, but objectively unreasonable. *See Eady v. Morgan*, 515 F.3d 587, 594–95 (6th Cir. 2008) (citing 28 U.S.C. § 2254(d)(2), (e)(1)). That burden has not been carried here. Thus, Solomon's broadside against the prosecution fails to breach the formidable barriers of both AEDPA and the doctrine of fair prosecutorial latitude. His claim of prosecutorial misconduct, therefore, does not warrant habeas relief.

### D.

Solomon's lastly asserts he was denied a fair trial by the cumulative effect of the foregoing claims. That is, he argues that, even if each individual error might not merit habeas relief, their cumulative effect somehow does. But that argument misses the mark under the law.

The Supreme Court has not endorsed the theory "that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). And the Sixth Circuit has been quite explicit on this point, repeatedly holding that claims of cumulative error do not demonstrate a constitutional claim in a habeas case. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

Moreover, the Michigan Court of Appeals parsed each of Solomon's allegations meticulously and found none of them persuasive. On habeas review, this Court may not reassess those conclusions *de novo*; it may only determine whether they are unreasonable applications of clearly established federal law. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). Here, Solomon offers nothing beyond mere disagreement with how the state courts weighed the evidence and applied the law.

For these reasons, his claim of cumulative errors must fall away as well. The absence of any single constitutional violation logically precludes the possibility of cumulative constitutional violations. *See* Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 35–36 (2022) (urging courts not to reach conclusions that are "neither reasonable nor logical"). Simply put, zero plus zero is still zero.

Having failed to establish grounds for relief on any claim, Solomon's petition will be dismissed with prejudice.

## IV.

Solomon needs a certificate of appealability to appeal this Order. *See* 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000). When a court rejects a habeas claim on the merits, the substantial-showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."). In applying that standard, a district court may not conduct a full merits review and must "limit its examination to a threshold inquiry into the underlying merit of [the petitioner's] claims." *Miller-El*, 537 U.S. at 323.

Here, Solomon's arguments, though forcefully presented, do not satisfy that standard. No reasonable jurist could conclude that the state court's adjudication of Solomon's claims was contrary to, or involved an unreasonable application of,

clearly established federal law as determined by the United States Supreme Court. Nor could it be said that the state-court decisions were based on an unreasonable determination of the facts in light of the evidence presented. Because Solomon has not demonstrated that his claims warrant further review under 28 U.S.C. § 2254(d), a certificate of appealability will not issue.

Finally, Solomon may not appeal without paying, because his appeal would not be taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context requires nonfrivolous claims; it does not require likely success on the merits. *See Boussum v. Washington*, 655 F. Supp. 3d 636, 642 (E.D. Mich. 2023). But Solomon's claims are grounded more in hope than in substance. Because any appeal would not present legal points arguable on their merits, it would not be taken in good faith.

## V.

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED**.

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED**.

**This is a final order and closes the above-captioned case**.


Dated: 4/30/2024                                         *s/Susan K. DeClercq*
                                                        SUSAN K. DeCLERCQ
                                                        United States District Judge

- 19 -